**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| Linquista White, Emily Bellamy, and Janice Carter, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | C.A. No. 2:19-3083-RMG |
| ) | |
| Kevin Shwedo, in his official capacity as the Executive Director of the South Carolina Department of Motor Vehicles; ) | **ORDER AND OPINION** |
| ) | |
| Defendant. ) | |

This matter is before the Court on Plaintiffs' motion for preliminary injunction. (Dkt. No. 35). This action arises out of the suspension of Plaintiffs' South Carolina driver's licenses, pursuant to S.C. Code Section 56-25-20, because of their failure to pay fines and fees associated with their convictions for various traffic-related offenses, including driving under suspension and driving without insurance. Plaintiffs assert that the suspension of their driver's licenses by the South Carolina Department of Motor Vehicles ("DMV") without first providing a hearing and an opportunity to demonstrate that non-payment was not willful deprives them of rights protected under the Equal Protection and Due Process Clauses of the Fourteenth Amendment of the United States Constitution.

By this motion for preliminary injunction, Plaintiffs seek to have the Court enjoin the DMV's suspension of driver's licenses in South Carolina for failure to pay fines and fees arising out of traffic offenses without first providing a hearing to determine that non-payment was not willful and to direct the DMV to lift all current failure to pay traffic ticket suspensions on

driver's licenses, strike reinstatement fees for those suspensions, reinstate licenses that have no other suspension basis, and provide notice to license-holders of these changes, pending the ultimate determination of the merits of Plaintiffs' claims. (Dkt. No. 35-1 at 8).

## Factual Background

South Carolina, like most other states, has enacted statutes that direct the suspension of driver's licenses for failure to pay traffic fines and fees.[1] When the DMV receives a Notice of Suspension from a South Carolina court or an out-of-state motor vehicle department indicating that an individual has failed to pay a traffic ticket, the DMV suspends the driver's license. (Dkt. No. 1 at 23). S.C. Code Section 56-25-20 codifies the DMV's authorization to suspend a driver's license for the failure to pay a traffic ticket.[2] The statutory scheme provides as follows:

> "When a South Carolina court or the driver licensing authority of a compact jurisdiction notifies the Department of Motor Vehicles that a resident of South Carolina or person possessing a valid South Carolina driver's license has failed to comply with the terms of a traffic citation or an official Department of Natural Resources summons for a littering violation issued in this or any compact jurisdiction, the department may suspend or refuse to renew the person's driver's license if the notice from a South Carolina court or the driver licensing authority of a compact jurisdiction is received no more than twelve months from the date on which the traffic citation or an official Department of Natural Resources summons for a littering violation was issued or adjudicated. The license must remain suspended until satisfactory evidence has been furnished to the department of compliance with the terms of the citation or an official Department of Natural Resources summons for a littering violation and any further order of the court having jurisdiction in the matter and until a reinstatement fee as provided in Section 56-1-390 is paid to the department."

---

[1] The DMV maintains a list of violations that will result in indefinite suspensions if traffic tickets are not paid. The list includes among other violations: failure to wear a seatbelt, improper parking, vehicle equipment violations, speeding less than ten miles per hour over the speed limit, driving under the influence, failure to change address/name, log book violations, and disorderly conduct. (Dkt. No. 12-2).

[2] S.C. Code Section 56-25-20 codifies South Carolina's participation in the Non-Resident Violators Compact ("NRVC"), an interstate agreement that allows penalties to be imposed on drivers in their home state for certain traffic violations that take place out of state. *See* S.C. Code Ann. § 56-25-20; (Dkt. No. 12-1 § M. 1).

S.C. Code Ann. § 56-25-20.

The suspension of a driver's license typically begins with the issuance of a traffic ticket to a driver that provides the right to contest the ticket in a summary court proceeding. (Dkt. No. 12-1 § M. 1); (Dkt. No. 46-13). The person receiving the ticket can pay the designated fine (referred to as "bond") before the court hearing or appear at the court for trial. (Dkt. No. 12-1 § M. 1); (Dkt. No. 46-13). South Carolina's Uniform Traffic Ticket states that the ticketed driver is "summoned to appear before the trial court" and sets forth the name of the court, the court's address, the alleged violation, and the date and time of the trial. (Dkt. No. 46-13). The back of the ticket warns that should the ticket recipient fail to pay the bond or appear at trial, "your home state Motor Vehicle Division will be notified to suspend your license until you have cleared this matter with the trial court." (*Id*).

A traffic defendant appearing at his or her trial can request, among other things, a suspension of some or all of his or her fine. Further, where an indigent traffic defendant appears at trial and a fine is imposed, the summary court judge is mandated to "adopt a payment plan to pay the fine and court fees" after consideration of the "income, dependents, and necessities of life of the individual." S.C. Code Ann. § 17-25-350. The Defendant argues that this indigency provision is unique among the states. (Dkt. No. 46 at 17).

A traffic defendant who fails to appear at the summary court for trial and fails to pay the designated fine prior to the date of the trial, will be tried in his or her absence. (Dkt. No. 12-1 § M. 1). Where the traffic defendant is tried in his or her absence and is found guilty, or otherwise fails to pay the imposed fine and/or court fees arising from the traffic ticket, the summary court sends a Notice of Suspension to the DMV to report the non-payment of these obligations. (Dkt. No. 1 at 23); (Dkt. No. 12-1 § M. 3).

The DMV, pursuant to S.C. Code Section 56-25-20, then acts to suspend the driver's license of the traffic defendant.  The DMV imposes a $100.00 reinstatement fee for each suspension arising from a failure to pay traffic ticket.  S.C. Code Ann. § 56-25-20; S.C. Code Ann. § 56-1-390.  The DMV sends an Official Notice to the traffic defendant that his or her license has been suspended and will remain suspended until all fines and fees are paid.  (Dkt. No. 12-1 § M. 3(8)(B); (Dkt. No. 46-5).  Before a driver's license can be reinstated, the reinstatement fees, outstanding fines, and court fees must be paid.  S.C. Code Ann. § 56-1-390; S.C. Code Ann. § 56-25-20; (Dkt. No. 12-1 § M. 3).  A traffic defendant can challenge the suspension of a driver's license in the South Carolina Administrative Courts upon the payment of a $200.00 filing fee.  S.C. Code Ann. § 56-5-2952.  A traffic defendant with a suspended license may apply for a payment plan of up to six months to pay any reinstatement fee imposed by the DMV.  *See* S.C. Code Ann. § 56-1-395 (listing eligibility requirements for driver's license reinstatement payment plan).

Plaintiffs in this action received multiple traffic citations and consistently failed to appear at their summary court proceedings.  *See* (Dkt. No. 10 at ¶¶ 8, 16, 21, 33, Bellamy Decl.); (Dkt. No. 11 at ¶¶ 14, 16–17, 22, 24, 26, 39, Carter Decl.); (Dkt. No. 9 at ¶ 27, 29, 30, 55, White Decl.).  Plaintiffs assert that they struggle to meet their financial obligations because of low paying employment. *See* (Dkt. No. 10 at ¶¶ 4–6, Bellamy Decl.); (Dkt. No. 11 at ¶¶ 5–12, Carter Decl.); (Dkt. No. 9 at ¶¶ 8–12, White Decl.)  Some claim they did not appear in summary court because they were unaware of the hearing date and time. *See* (Dkt. No. 10 at ¶¶ 13, 31, 33, Bellamy Decl.); (Dkt. No. 9 at ¶¶ 27 White Decl.)  They generally did not pay their fines and fees because they did not have the funds necessary to pay their obligations.[3]  *See* (Dkt. No. 10 at

---

[3] In September 2019, White received a payment that enabled her to purchase car insurance and pay the ticket that lead to the suspension on her driver's license, along with the $100.00 reinstatement

-2-

¶ 5, Bellamy Decl.); (Dkt. No. 11 at ¶¶ 9–13, 23, Carter Decl.); (Dkt. No. 9 at ¶¶ 8–9, 12, 50–51, 55, White Decl.)   As a consequence of failing to appear at the summary court, Plaintiffs were tried in their absence, sentenced to pay fines and fees arising from their traffic tickets, and were unable to obtain the benefit of a payment plan provided for under state law. Once their licenses were suspended, they were not eligible for reinstatement until all fines and court fees were paid, which they report they lacked the resources to pay.  (Dkt. No. 1 at ¶¶ 17–19).  Their lack of financial resources often resulted in further complications and some Plaintiffs continued to drive their automobiles without a driver's license and liability insurance, which then led to additional tickets and fines for driving with a suspended license and driving without liability insurance. *See* (Dkt. No. 10 at ¶¶ 21–22; Bellamy Decl.); (Dkt. No. 9 at ¶¶ 36–37, 55, White Decl.).

Plaintiffs focus their challenge on the actions and procedures of the DMV and argue that the absence of a hearing before license suspension to demonstrate a lack of willfulness in the non-payment of obligations violates their constitutional rights.  (Dkt. No. 35-1 at 8).   The Defendant, who serves as the Executive Director of the DMV, asserts that the state provides due process and protections for indigent persons through the summary court proceedings and that Plaintiffs here did not obtain the benefits of these protections and procedures because of their failure to appear at their summary court proceedings.  (Dkt. No. 46 at 18–23).  The Defendant, while not disputing Plaintiffs' claims that non-payment was not willful or that Plaintiffs' lack of financial resources imposed burdens on them when receiving traffic citations, asserts that poverty is not a suspect class and the state's statutory scheme and procedures for enforcing payment of traffic fines and related court fees have a rational basis.

---

fee. (Dkt. No. 9 at ¶¶ 50–51). Since the filing of the instant motion, Plaintiffs contend White's remaining traffic tickets were dismissed. (Dkt. No. 50 at 7).

**Legal Standard**

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also U.S. Dep't of Labor v. Wolf Run Mining Co.*, 452 F.3d 275, 281 n.1 (4th Cir. 2006). To obtain a preliminary injunction Plaintiff must show:

(1) that he is likely to succeed on the merits,

(2) that he is likely to suffer irreparable harm in the absence of preliminary relief,

(3) that the balance of equities tips in his favor, and

(4) that an injunction is in the public interest.

*Winter*, 555 U.S. at 20. A Plaintiff seeking injunctive relief must show that all four of the *Winter* factors support granting relief. *See Id.*; *see also Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991) (noting that the Plaintiff "bears the burden of establishing that each of these factors supports granting the injunction") (quoting *Technical Publ'g Co. v. Lebhar-Friedman, Inc.*, 729 F.2d 1136, 1139 (7th Cir. 1984)).

**Discussion**

In their motion for preliminary injunction, Plaintiffs challenge the DMV for violating the right to protection from punishment for inability to pay grounded in both due process and equal protection. Plaintiffs request a preliminary injunction as to Claim One of the Complaint, seeking an Order from the Court to: (1) prohibit the DMV from suspending driver's licenses for failure to pay that was not willful; and (2) require the DMV to lift all current failure to pay traffic ticket suspensions on driver's licenses, strike reinstatement fees for those suspensions, reinstate licenses that have no other suspension basis, and provide notice to license-holders of these changes, pending the ultimate determination of the merits of Plaintiffs' claims. (Dkt. No. 35-1 at 8).

As a threshold matter for obtaining a preliminary injunction, Plaintiffs must demonstrate that they have likelihood of success on the merits. Plaintiffs principally rely on *Bearden v. Georgia* and other precedent from the Supreme Court of the United States that hold that due process and equal protection prohibit a state from punishing based solely on inability to pay. 461 U.S. 660 (1983). *Bearden* is part of a long line of cases that firmly establishes that the government may not imprison a criminal defendant solely due to the person's non-willful inability to pay a fee or a fine. Beginning in *Griffin v. Illinois*, the Court laid foundational principles regarding equal justice to address the rights implicated when one is a criminal defendant. In *Griffin*, the Court addressed the constitutionality of requiring criminal defendants to pay for transcripts in order to file an appeal. 351 U.S. 12, 13 (1956). The Court held that "there can be no equal justice where the kind of trial a man gets depends on the amount of money he has." *Id.* at 19.

Expounding on the principles set forth in *Griffin*, the Court in *Bearden* held that "due process and equal protection principles converge" in some contexts into a constitutional requirement of "fundamental fairness" that requires courts to conduct a more "careful inquiry into such factors as the nature of the individual interest affected, the extent to which it is affected, the rationality of the connection between legislative means and purpose, and the existence of alternative means for effectuating that purpose." *Bearden*, 461 U.S. at 665–66 In *Bearden*, the Court applied these factors. The Court was concerned with whether the state could revoke probation and incarcerate an individual for failing to pay a fine or restitution when the individual could not pay the fine. *Id.* at 661. The Court held that incarceration in that context is fundamentally unfair and a court is required to conduct an inquiry into the reasons for the failure to pay and determine that alternative measures are not adequate before imposing a sanction for nonpayment. *Id.* at 672–73.

The Supreme Court of the United States has only applied this "fundamental fairness" doctrine in cases where a state has deprived a person of fundamental rights because of indigency by subjecting the person to incarceration or denying access to courts. *M.L.B. v. S.L.J.*, 519 U.S. 102, 117 (1996) (access to courts); *Tate v. Short*, 401 U.S. 395 (1971) (incarceration); *Williams v. Illinois*, 399 U.S. 235 (1970) (incarceration); *Griffin*, 351 U.S. 12 (access to courts). Plaintiffs contend the "fundamental fairness" test established in *Bearden* applies when a state imposes "adverse consequences against indigent defendants solely because of their financial circumstances, regardless of whether those adverse consequences take the form of incarceration, reduced access to court procedures, or some other burden." (Dkt. No. 35-1 at 29). In addition, Plaintiffs argue the *Griffin/Bearden* line of cases has never been limited to deprivations of fundamental rights, but rather applies when the state imposes "heightened civil or criminal penalties based solely on [an individual's] inability to pay." (*Id.* at 26) (citing *Alexander v. Johnson*, 742 F.2d 117, 126 (4th Cir. 1984)).

Defendant argues that the *Griffin/Bearden* line of cases is inapplicable to an alleged harm that does not involve fundamental rights or interests or where the complaining party is not subject to incarceration. (Dkt. No. 46 at 21–27). Defendant points to recent decisions across the country which have held that similar driver's license suspension provisions under other states' laws do not violate the constitutional rights of indigent plaintiffs. (*Id.*); (Dkt. No. 35-1 at 26). For instance, the Sixth Circuit Court of Appeals, the District Court for the Middle District of North Carolina, and the District Court of Oregon declined to adopt Plaintiffs' primary position that the *Griffin*/*Bearden* analysis applies where a state seeks to sanction a person through the suspension of a driver's license solely based on the person's inability to pay.[4] The District Court

---

[4] *See Fowler v. Benson*, 924 F.3d 247, 260–61 (6th Cir. 2019), *reh'g en banc denied*; *Johnson v. Jessup*, 381 F. Supp. 3d 619 (M.D. N.C. 2019), *appeal docketed*, No. 19-1421 (4th Cir. Apr. 18, 2019); *Mendoza v. Garrett*, 358 F. Supp. 3d 1145, 1171 (D. Or. 2018), *appeal docketed*, No. 19-

for the Middle District of Tennessee addressed similar issues in which the position of the Plaintiffs was rejected in whole or in part.[5]

In addition, Defendant points to S.C. Code Section 17-25-350, which distinguishes South Carolina from other challenged statutory schemes because Section 17-25-350 provides a mandatory provision for summary courts to assess indigency along with factors for the court to consider. *Compare Robinson v. Purkey*, No. 3:17-CV-1263, 2017 WL 4418134, at * 2 (M.D. Tenn. Oct. 5, 2017), *with* S.C. Code Ann. § 17-25-350. In addition, Defendant argues Plaintiffs failed to attend their summary court hearings and missed an opportunity for the court to address any claims of indigency. (Dkt. No. 46 at 18–23).

The "fundamental fairness" test Plaintiffs propound is a hybrid between strict scrutiny and rational basis that has historically been applied where a fundamental interest is at stake. In *Mendoza v.Garrett*, the court aptly summarized the historical limits of the "fundamental fairness" principle under a *Griffin/ Bearden* analysis:

> " What all of these cases teach is that the "fundamental fairness" principles of due process and equal protection originating in Griffin have been applied when either incarceration or access to the courts, or both, is at stake. The incarceration cases clearly implicate the fundamental right to be free from wrongful detention, meaning the fundamental right to liberty. The access to courts cases have arisen in either (1) the criminal context where the rights to both a fair trial and a conviction only upon proof beyond a reasonable doubt are implicated by effectively denying an appeal to an indigent defendant, or (2) the narrow circumstances of a parental termination where the state's 'awesome' authority to permanently destroy what the Supreme Court had already recognized as 'the most fundamental family relationship' was at stake. *M.L.B.*, 519 U.S. at 121 (citing *Santosky v. Kramer*, 455 U.S. 745, 753 (1982)).

---

35506 (9th Cir. June 11, 2019).

[5] *Thomas v. Haslam*, 329 F. Supp. 3d 475, 479 (M.D. Tenn. 2018), *vacated and remanded sub nom. Thomas v. Lee*, 776 F. App'x 910 (6th Cir. 2019); *Robinson v. Purkey*, No. 3:17-CV-1263, 2017 WL 4418134 (M. D. Tenn. Oct. 5, 2017), *appeal docketed sub nom. Robinson v. Long*, No. 18-6121, (6th Cir. Oct. 24 2018). In *Robinson v. Purkey*, the district court granted a preliminary injunction, 2018 WL 50223330, but the Sixth Circuit Court of Appeals then stayed the preliminary injunction. (Dkt. No. 46-16).

*Mendoza* v. *Garrett*, 358 F. Supp. 3d 1145,1171 (D. Or. 2018).

Contrary to Plaintiffs' contention, the "fundamental fairness" doctrine does not apply to the instant inability to pay claim because no fundamental right or interest is at stake. *See Johnson v. Jessup*, 381 F. Supp. 3d 619, 631 (M.D.N.C. 2019) (explaining plaintiffs' argument that the "fundamental fairness" doctrine applied to the DMV statutory scheme although no fundamental right or interest was implicated came "perilously close to an argument that courts must apply a higher standard of scrutiny to statutory classifications based on indigency- a principle the Supreme Court has 'repeatedly' rejected in favor of a rational basis analysis") (citing *Harris v. McRae*, 448 U.S. 297 323–24 (1980)); *Mendoza*, 358 F. Supp. 3d at 1171 (finding no fundamental rights or interest present that would warrant the application of "fundamental fairness" principles of due process and equal protection under *Griffin/Bearden*); *Fowler v. Johnson*, No. CV 17-11441, 2017 WL 6379676, at *6–7 (E.D. Mich. Dec. 14, 2017), *rev'd and remanded sub nom. Fowler v. Benson*, 924 F.3d 247 (6th Cir. 2019) (recognizing the *Griffin/Bearden* line of cases does not find "that it is fundamentally unfair in a constitutional sense for a state to deprive a person of a property interest such as a driver's license because of the person's inability to pay a fine associated with that interest.")

Absent the involvement of a suspect classification or fundamental right, statutes challenged under the Fourteenth Amendment's equal protection or substantive due process guarantees are upheld so long as they have a rational basis. *Colon Health Ctrs. Of Am., LLC v. Hazel*, 733 F.3d 535, 547–48 (4th Cir. 2013). Based on the Court's review of the *Griffin/Bearden* precedent and the interest at stake, this Court finds that the application of a heightened level of scrutiny is not warranted. Instead, the Court will apply the rational basis test to Defendant's challenged statutory scheme. In order to survive rational basis review, a policy and practice must be

"rationally related to a legitimate state interest." *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976). In a rational basis analysis, a policy and practice must be struck down if the classification is "discontinuous with the reasons offered for it." *Romer v. Evans*, 517 U.S. 620, 632 (1996).

Defendant asserts that the state has a rational basis for its driver's license suspension policies because they promote payment of traffic fines and deter violations of traffic laws. Further, Defendant asserts that the state also has legitimate interests in promoting compliance with court orders and in collecting traffic debt. (Dkt. No. 46 at 24–25); *Fowler*, 924 F.3d at 262; *Johnson*, 381 F. Supp. at 631 (noting that revocation of a driver's license for failure to pay traffic violation fines or costs, serves to "impos[e] a motivation to accomplish what an individual might otherwise be inclined to do" – to pay the fines and fees and costs . . . There is no argument that the collection of monetary exactions is not a legitimate state interest.")

Plaintiffs argue that the law is "counterproductive to deprive indigent people of driver's licenses, particularly in South Carolina, where there is inadequate public transportation and the overwhelming majority of residents must drive to work and Plaintiffs are severely impaired in their ability to earn income and pay traffic fines and fees. (Dkt. No. 35-1 at 39); *see also Fowler*, 924 F.3d at 263 (plaintiffs argued suspending the driver's license of an indigent license holder for nonpayment is irrational because doing so makes it harder for him to obtain and hold a job, which in turn makes him less likely to pay his court debt.) The issue presented to the Court is not whether the state's policy is misguided or unwise since the federal courts do not sit as a super legislature weighing the prudence or lack thereof of various state laws. Instead, the question is whether the state has articulated a rational basis for its policies and procedures. *James v. Strange*, 407 U.S. 128, 133–134 (1972) (recognizing a state's policy may be unwise,

-2-

even counterproductive, yet "[m]isguided laws may nonetheless be constitutional . . . [the Court's] task . . . is not to weigh this statute's effectiveness but its constitutionality.")  At this stage of the litigation and with the limited record before the Court, it is apparent that Plaintiffs cannot demonstrate a likelihood of success on the merits since the state has articulated a rational basis for its driver's license suspension policies.

Having determined that one of the four essential *Winter* factors for the issuance of a preliminary injunction, a likelihood of success on the merits, has not been met by Plaintiffs, it is not necessary for the Court to address the other *Winter* factors.  The Plaintiffs' motion for a preliminary injunction (Dkt. No. 35) is denied.

**AND IT IS SO ORDERED**.

                                                                 s/ Richard M. Gergel
                                                                 Richard M. Gergel
                                                                 United States District Judge

May 11, 2020
Charleston, South Carolina